UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-22290-Civ-SCOLA

TIFFANY N. THORNE,

    Plaintiff,

vs.

ACCOUNTS RECEIVABLE MANAGEMENT,
INC., *et al.*,

    Defendant.
_____/

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Plaintiff's Motion for Partial Summary Judgment (ECF No. 58) and the Defendant's Motion for Summary Judgment (ECF No. 62). The Court has reviewed the Motions, the record, and the relevant legal authorities, and for reasons set forth more fully below, it is **ORDERED and ADJUDGED** that the Plaintiff's Motion is **GRANTED IN PART and DENIED IN PART**, and the Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

**I.**    **FACTUAL BACKGROUND**

Plaintiff Tiffany Thorne ("Thorne") brought this action against Defendant Accounts Receivable Management, Inc. ("ARM") on June 23, 2011 (ECF No. 1). Thorne's First Amended Complaint (ECF No. 32) was filed on January 6, 2012, and raises two counts against ARM claiming violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Count I alleges that ARM's conduct, as set forth below, violated 15 U.S.C. § 1692e(11), and Count II alleges that the same conduct also violated 15 U.S.C. § 1692d(6). The First Amended Complaint also made "class action allegations" alleging that ARM used uniform telephone messages to collect debts from other persons. Thorne moved to certify a class on February 1, 2012 (ECF No. 35). The Court denied that motion on June 27, 2012 (ECF No. 79); therefore, only Thorne's individual claims against ARM remain on the present Motions.

Most of the factual record in this action concerns Thorne's class action claims and the parties' dispute regarding the maximum possible recovery in an FDCPA class action under 15 U.S.C. § 1692k(a)(3). As the Court denied certification of Thorne's proposed class, her class action claims are no longer before the Court. As to Thorne's remaining individual claims, the factual record is relatively short and few facts are in dispute.

Thorne incurred an alleged debt to Westchester Healthcare Network (believed to be a fictitious name for Westchester General Hospital) for her medical care. Thorne Decl. ¶ 3, ECF No. 61; Def.'s Resp. to Pl.'s Motion for Summary Judgment 4:5, ECF No. 69. Thorne did not pay that debt, and it went into default. *Id.* ARM is a business whose principal purpose is the collection of debts, and which regularly uses the mail and telephone in an effort to collect debts for other parties. Pl.'s Statement of Material Facts ¶ 3, ECF No. 60; Def.'s Resp. to Pl.'s Motion for Summary Judgment 4:7; Rivera Dep. 4:11–5:21, Jan. 23, 2012, ECF No. 40-1. ARM collects only medical debts. Rivera Dep. 5:6–10. Westchester Healthcare Network referred an account for a person named Tiffany Thorne to ARM for collection purposes. *See* Answer ¶ 12, ECF No. 34; Rivera Dep. 13:1–4. Subsequently, ARM placed a telephone call to Thorne in an attempt to collect the debt owed to Westchester Healthcare Network. *See* Rivera Dep. 13:1–4. (affirming that "[t]he call that ARM placed to Ms. Thorne" was "to collect an outstanding balance" due to Westchester General Hospital). Thorne declares under penalty of perjury, uncontradicted by record evidence, that on November 12, 2010, ARM left the following prerecorded message on her voice mail:

> This message is being left during business hours for Thorne Tiffany N. Please return ou[r] call at 888-548-8829 between the hours of 8 a.m. and 9 p.m. Monday [through] Thursday, Friday 8 a.m. until 5 p.m., Saturday 8 a.m. until 12 noon. Thank you.

Thorne Decl. ¶ 8; *cf. also* Rivera Dep. 10:3–15 (acknowledging that message Thorne declares she received appeared to be standard message that ARM was using around November 12, 2010). ARM intended to transmit this message to Thorne's answering machine, and did so for the purpose of collecting the debt she owed to Westchester Healthcare Network. *Id.* at 13:1–4 (affirming ARM's purpose in leaving message was to collect debt due to Westchester General Hospital), 15:20–25 (affirming intent to transmit message to Thorne's answering machine). The message, as with ARM's standard message used around that date, does not state ARM's name, or its identity as a debt collector. *Id.* at 11:2–7. Around November 12, 2010, ARM had a written policy to leave prerecorded phone messages, like that left for Thorne, that did not disclose ARM's name or its identity as a debt collector. *Id.* at 47:5–10. Thus, all of the messages placed by ARM through its

Comtronics dialer[1] failed to state ARM's name and its identity as a debt collector. *Id.* at 45:6–13. ARM has a policy of using the Comtronics dialing system to call only once for each account. *Id.* at 25:14–26:3.

In this action, it is undisputed that Thorne seeks only statutory damages under 15 U.S.C. § 1692k(2)(A). *See* Pl.'s First Rule 26 Initial Disclosure 2 at (C), ECF No. 62-3 (listing only § 1692k(2)(A) damages in computing damages, along with attorneys' fees, costs, and expenses); Pl.'s Opposition to Def.'s Statement of Undisputed Facts 1 ¶ 1, ECF No. 67 [hereinafter Pl.'s Resp. to Def.'s Facts]. On August 31, 2011, ARM, through counsel, sent an email to Thorne's counsel that offered Thorne $1,001.00 plus reasonable attorney's fees and court costs to resolve her individual claims against ARM. *See* Email, ECF No. 62-1.

## II.   LEGAL STANDARD

### a. Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue

---

[1] Comtronics is a predictive dialing system. *See* Rivera Dep. 7:11–24.

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

    b. FDCPA

The FDCPA was established by Congress "to eliminate abusive debt collection practices" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Act provides a civil cause of action against any debt collector who fails to comply with its requirements, including §§ 1692e(11) and 1692d(6). *See* 15 U.S.C. § 1692k(a). A debt collector can be held liable for an individual plaintiff's actual damages, statutory damages up to $1,000, costs, and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(1)-(3). Section 1692d(6), which concerns harassment or abuse, prohibits debt collectors from "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Section 1692e(11) requires a debt collector to point out that it is "attempting to collect a debt and that any information obtained will be used for that purpose," and must identify itself as a debt collector. 15 U.S.C. § 1692e(11). The Eleventh Circuit evaluates FDCPA claims under the "least sophisticated consumer" standard. *Ponce v. BCA Fin. Services, Inc.*, 467 F. App'x 806, 808 (11th Cir. 2012); *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir.1985) (adopting "least sophisticated consumer" standard from Federal Trade Commission Act cases for cases under FDCPA).

Under the FDCPA, a "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). A "consumer" is defined as "any natural person obligated or allegedly obligated to pay a debt." *Id.* at § 1692a(3). A "debt" is defined as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* at § 1692a(5). A "debt collector" is defined in pertinent part as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." *Id.* at § 1692a(6).

### III. ANALYSIS AND CONTROLLING AUTHORITY AS TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

With a few exceptions, each party generally makes the same arguments in support of its own Motion and in response to the opposing party's Motion. Therefore, the Court addresses those

arguments regarding both Motions as necessary. The Court begins its analysis with ARM's Motion, which largely repeats arguments raised in opposition to Thorne's previous motion for class certification, substantially addressed by the Court in denying that motion.

ARM raises three main arguments in its Motion for Summary Judgment. First, it argues that Thorne lacks standing to assert her claims for various reasons. Second, ARM contends that the record evidence shows that Thorne has not—and legally cannot—establish that ARM violated § 1692d(6) for the purposes of Count II, requiring summary judgment for ARM as to that Count. Third, ARM argues that it is entitled to summary judgment as to any putative class claims, since the record shows no evidence of positive net worth for a putative class to recover under § 1692k(a)(3). In light of the Court's denial of class certification, Thorne's class action claims are no longer before the Court, and therefore ARM's argument regarding its net worth is moot, and the Court does not address the issue.

  *a. Standing*

According to ARM, the record demonstrates that the Court does not have subject matter jurisdiction over Thorne's FDCPA claims, as she lacks standing to pursue those claims for three reasons, namely that (1) Thorne's claim is moot; (2) the fact that she only seeks statutory damages deprives her of Article III standing; and (3) there is no evidence on the record of ARM's positive net worth for the purposes of class recovery under § 1692k(a)(3). As noted above, class recovery issues are now moot.

  1. Mootness

ARM first argues that Thorne lacks standing because her claims were rendered moot by ARM's written settlement offer, which offered her $1,001.00 plus reasonable attorney's fees and court costs to resolve her claims. *See* Email. Under Federal Rule of Civil Procedure 68, a defendant can "serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). When a plaintiff is tendered an offer of judgment for the maximum allowable relief*,* it moots an FDCPA claim, even when that offer is not accepted. *Lynch v. First Nat. Collection Bureau, Inc.*, No. 11-60798-CIV, 2011 WL 2457903*,* at *1 (S.D. Fla. Jun. 17, 2011) (Cohn, J.); *see also Moore v. Hecker*, 250 F.R.D. 682, 683 (S.D. Fla. 2008) (Cohn, J.) (stating same); *Mackenzie v. Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211, 1218–19 (M.D. Fla. 2003) (finding dismissal of FLSA claim as moot appropriate after plaintiff was tendered and

rejected Rule 68 offer for amount exceeding that which plaintiff could have received at trial). "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Co-op, Inc.*, 298 F.3d 1238, 1240 (11th Cir. 2002) (quoting *Marek v. Estate of Chesny,* 473 U.S. 1, 5 (1985)). Thus, "Rule 68 allows a defendant to make a firm, non-negotiable offer of judgment." *Id.*

ARM claims that its settlement offer for one dollar more than what Thorne can recover under the FDCPA renders her individual claims moot and requires dismissal of this action. However, as the Court noted in denying class certification, a Rule 68 offer of judgment is distinguishable from a mere offer of settlement, as an offer of judgment requires that actual judgment be allowed. *See, e.g., Moten v. Broward Cnty., Fla.*, No. 10-62398-CIV, 2011 WL 5877034, at *3 (S.D. Fla. Nov. 23, 2011) (Cohn, J.) (finding evidence of "attempt to settle" insufficient and that "Defendant has presented no evidence that it served Plaintiff with a Rule 68 offer of judgment."); *Balthazor v. ARS Nat'l Servs., Inc.*, No. 11-60821-CIV, 2011 WL 367701, at *1–*2 (S.D. Fla. Aug. 18, 2011) (Cohn, J.) (discussing "whether a mere offer of full damages moots a case" and concluding that "[t]his Court does not find that the action is moot as Plaintiff has not been afforded the relief of an enforceable judgment"); *Lynch*, 2011 WL 2457903, at *2 (finding offer did not render FDCPA claim moot where it did not include judgment against all defendants); *Manfred v. Focus Receivables Mgmt., LLC,* No. 10–60597–CIV (S.D. Fla. Apr. 6, 2011) (order denying motion to dismiss, ECF No. 29) (Zloch, J.) ("Defendant maintains that its settlement offer to Plaintiff of full statutory damages and reasonable attorney's fees was sufficient to moot his FDCPA claims, despite the facts that Defendant has not submitted to a final judgment . . . . The Court cannot construe Defendant's settlement offer to be a Rule 68 offer for the purposes of mooting Plaintiff's FDCPA claims, and then distinguish it from a Rule 68 offer in order to protect Defendant from having a judgment entered against it."); *cf. Util. Automation 2000, Inc.*, 298 F.3d at 1240 (distinguishing Rule 68 "non-negotiable offer of judgment" from "traditional settlement negotiations").

In denying class certification, the Court found that the record and the case law demonstrated that ARM's offer was not an offer of judgment, but rather a mere settlement offer that did not include an offer of judgment against ARM, which Thorne demanded in her First Amended Complaint. *See* 1st Am. Compl. 7, ECF No. 32. The law ARM cites does not compel the Court to reach a different conclusion now. For example, in *Muldrow v. Credit Bureau Collection Services*, while the Court initially dismissed the plaintiff's complaint on mootness grounds, it also *entered*

*judgment* for the plaintiff. Upon the defendant's subsequent motion for reconsideration of the judgment, the Court rejected its "duplicitous positions" and noted that it may have even been misled on the prior motion to dismiss:

> To be clear, this Court was led to believe that the Defendant's offer to the Plaintiff would afford [her] complete relief and satisfy *all of her demands as set out in her complaint.* One of the Plaintiff's demands was that 'the Court *enter judgment* in favor of Plaintiff and against Defendant . . . . Now the Defendant argues that it only offered the Plaintiff *partial* relief. Accepting both propositions would lead to one conclusion: that this Court was misled in one of these instances.

*See* Order Denying Def.'s Motion for Reconsideration, *Muldrow v. Credit Bureau Collection Servs., Inc.*, No. 09-61792-CIV, ECF No. 26 (S.D. Fla. Dec. 22, 2010) (Cooke, J.) (emphasis added). Thus, *Muldrow* actually reinforces the distinction between a mere settlement offer and an offer of judgment. ARM's argument that its settlement offer moots Thorne's claims as an offer of judgment is even more untenable in support for the entry of summary judgment *in its favor*. In sum, the Court does not find that ARM offered Thorne the full relief she seeks. *See Lynch*, 2011 WL 2457903, at *2 ("[A]n Offer of Judgment cannot be evaluated solely by its dollar amount."). Therefore, Thorne's claim was not rendered moot by ARM's settlement offer.

2. Article III Standing

ARM also argues that Thorne lacks Article III standing to pursue her FDCPA claims because she only seeks statutory damages under § 1692k(a)(2)(A). *See* Pl.'s First Rule 26 Initial Disclosure 2 at (C). Asserting that Thorne has not suffered a personal injury or injury in fact from its conduct, ARM contends that she only seeks a financial stake in this action, and therefore she cannot establish Article III standing.

Article III of the Constitution only grants federal courts judicial power to decide actual "Cases" and "Controversies." U.S. Const. Art. III § 2. The doctrine of standing is a "core component" of this fundamental limitation that "determin[es] the power of the court to entertain the suit." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264–65 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *Id.* (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006)). The "irreducible constitutional minimum" of standing under Article III consists of three elements: (1) The plaintiff

must have suffered an actual or imminent injury, or a concrete "invasion of a legally protected interest"; (2) that injury must have been caused by the defendant's complained-of actions; and (3) the plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. *Lujan*, 504 U.S. at 560–61; *see also Hollywood Mobile Estates Ltd.*, 641 F.3d at 1265 (stating same). The actual or imminent injury component requires a showing of "a harm that is both concrete and actual or imminent, not conjectural or hypothetical." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000).

ARM correctly notes that "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). However, ARM's argument equates "injury in fact" or "actual or imminent injury" with a claim for actual *damages* under the FDCPA. Rather, the "injury in fact" component has been repeatedly defined as the invasion or violation of a legally protected interest. *See, e.g., Vt. Agency of Natural Res.,* 529 U.S. at 773 ("The interest must consist of obtaining compensation for, or preventing, the violation of a *legally protected right*." (emphasis added)); *Lujan*, 504 U.S. at 560–61 (defining "injury in fact" as "an invasion of a *legally protected interest*" (emphasis added)); *Hollywood Mobile Estates Ltd.*, 641 F.3d at 1265 ("The injury-in-fact element requires invasion of a *legally protected interest*." (emphasis added)). The Supreme Court stated in both *Warth* and *Lujan* that "[t]he . . . *injury* required by Art. III may exist *solely* by virtue of 'statutes creating legal rights, the invasion of which *creates standing*.'" *Lujan*, 504 U.S. at 578 (emphasis added) (quoting *Warth*, 422 U.S. at 500). The requirement of an injury-in-fact does not "suggest that Congress cannot define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." *Vt. Agency of Natural Res.*, 529 U.S. at 773. Here, Congress has done just that providing (contrary to ARM's reading of the statute) that a violating debt collector may be liable *in the alternative* for a plaintiff's actual damages *or* statutory damages. *See* 15 U.S.C. § 1692k(a). ARM has not identified any controlling case law holding that a plaintiff lacks standing to pursue an FDCPA claim for statutory damages after receiving a message violating that statute. The FDCPA, expressly designed to protect consumers against unscrupulous debt collection practices, defines a legally protected interest of consumers against such practices, and a violation of the FDCPA's provisions invades that interest. Thus, Thorne has more than a mere financial stake in this litigation; she claims a distinct and palpable injury-in-fact based on her receipt of a message that violated her legally-protected interest under the FDCPA. Accordingly, Thorne does not lack Article III standing.

In sum, the Court determines that Thorne has standing to pursue her FDCPA claims against ARM.  Thus, ARM is not entitled to summary judgment or a dismissal with prejudice on standing grounds.  The Court now turns to ARM's arguments for the entry of summary judgment regarding specific Counts of the First Amended Complaint.

    *b. Summary Judgment Arguments*

ARM further argues that it is entitled to summary judgment on Thorne's claims because she has failed to present sufficient record evidence to satisfy certain required components of the violations she charges.  First, ARM asserts that Thorne has not presented any record evidence that ARM made more than one attempted call to her, and that this is legally insufficient to establish her claim in Count II under § 1692d(6).  Second, ARM argues that the record evidence does not establish that ARM's message was a "communication" as the term is defined by the FDCPA, rendering her claim legally insufficient.[2]  The Court addresses these arguments in turn.

    1. <u>Count II:  § 1692d(6)</u>

In Count II, Thorne alleges that ARM's message failed to make a meaningful disclosure of ARM's identity in violation of § 1692d(6).  That section provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).  ARM argues that Thorne has not presented record evidence that ARM made more than one attempted call to her, and that this is legally insufficient to establish her claim in Count II under § 1692d(6).  In fact, Thorne does not dispute that ARM called her only once, as was ARM's policy on November 12, 2010.  *See* Pl.'s Opposition to Def.'s Statement of Undisputed Facts 1 ¶2; 4 ¶ 8.  Thus, the purely legal question before the Court as to Count II is whether more than one telephone call is required in order to violate Section 1692d(6).

---

[2] ARM also argues again that it is entitled to summary judgment as to Thorne's putative class claims, again citing the maximum allowable class recovery under § 1692k(a)(3).  For the same reasons cited above, this argument is moot.

In denying class certification, this Court already answered that question in the affirmative. Upon a review of the record, the Court sees no reason to depart from those findings, or to depart from the Eleventh Circuit's canons of statutory construction: "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Tobin*, 676 F.3d 1264 (11th Cir. 2012) (quoting *United States v. Fisher*, 289 F.3d 1329, 1337–38 (11th Cir. 2002)). It is a "fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Fid. Interior Constr., Inc. v. The Se. Carpenters Reg'l Council of the United Bhd. of Carpenters and Joiners of Am.*, 675 F.3d 1250, 1264 (11th Cir. 2012) (quoting *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 722, 102 S.Ct. 2112, 2115, 72 L.Ed.2d 511 (1982)). As the Supreme Court held, "The use of 'conditions,' a word in the plural, suggests that Congress did not intend to limit the bases for modifying awards to a single condition, such as an employee's physical health." *Metro. Stevedore Co. v. Rambo*, 515 U.S. 291, 296 (1995) (citing 2A N. Singer, Sutherland on Statutory Construction § 47.34, p. 274 (5th rev. ed. 1992) ("'Ordinarily the legislature by use of a plural term intends a reference to more than one matter or thing'")).

Two courts in the Southern District of Florida have considered this issue. In *Sampaio v. I.C. Sys., Inc.*, the court held that the plain language of § 1692d(6) "requires the plaintiff to allege more than a single wrongful call for liability to attach." No. 09-21689-CIV (S.D. Fla. Nov. 6. 2009) (Jordan, J.). Judge Jordan recognized that the statute prohibits "the placement of *telephone calls* without meaningful disclosure of the caller's identity." *Id.* (quoting 15 U.S.C. § 1692d(6)) (emphasis added by Judge Jordan). Similarly, in *Bianchi v. P&B Capital Grp., LLC*, the court held that the plain language of § 1692d(6) "requires more than a single call for liability to attach." No. 10-60931-CIV (S.D. Fla. Jan. 20, 2011) (Martinez, J.).

The Court finds the reasoning of Judge Jordan and Judge Martinez persuasive, and in accordance with the Eleventh Circuit's canons of statutory construction, continues to find that § 1692d(6)'s use of the plural term "calls" is a reference to more than one call. As a result, a plaintiff in a § 1692d(6) action must prove that the defendant made at least *two* violative calls within the relevant statute of limitations. It is undisputed that ARM made only one call to Thorne within that period. Def.'s Motion for Summary Judgment 3 ¶ 2; Pl.'s Resp. to Def.'s Facts 1 ¶ 2. These undisputed facts are insufficient as a matter of law to assert a legally cognizable claim under §

1692d(6). Accordingly, ARM is entitled to summary judgment as to Count II of Thorne's First Amended Complaint.

### 2. Count I: "Communications" under the FDCPA

ARM also contends that its message to Thorne did not constitute a "communication" as the term is defined by the FDCPA, rendering her claims legally insufficient. Having determined that ARM is entitled to summary judgment as to Count II, the Court only addresses this argument as to Count I under § 1692e(11).

Section 1692e(11) provides, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (11) The failure to disclose in the . . . initial oral *communication* [with the consumer] that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent *communications* that the *communication* is from a debt collector.

15 U.S.C. § 1692e(11) (emphasis added). Thus, in order to give rise to liability under § 1692e(11), a defendant's conduct must be a "communication" as that term is defined by the FDCPA. As set forth above, a "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).[3] ARM argues that its message to Thorne did not expressly or implicitly reference a debt, but rather only stated that it was being left for "Thorne Tiffany N." and requested a return call. Thorne Decl. ¶ 8. According to ARM, the message did not convey information regarding a debt and cannot constitute a "communication" under the FDCPA.

Neither the Eleventh Circuit nor any other has set forth a bright-line rule for what types of communications (in the everyday sense) constitute "communications" for the purposes of the FDCPA. ARM essentially contends that the fact that its message did not convey information

---

[3] Also as set forth above, a "debt" is defined as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). ARM does not dispute that Thorne incurred an alleged "debt" to Westchester Healthcare Network for her medical care. *See* Def.'s Resp. to Pl.'s Motion for Summary Judgment 4:5, ECF No. 69; *see also infra* Part IV.a.

regarding a debt *on its face* means that it did not convey information regarding a debt for the purposes of an FDCPA claim. However, § 1692a(2) applies to information conveyed "directly *or indirectly*." 15 U.S.C. § 1692a(2) (emphasis added). The Eleventh Circuit has stated that voice mail messages substantially similar to that left for Thorne constituted "subsequent communications" within the meaning of § 1692e(11). *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1351, 1353 n.3 (11th Cir. 2009).[4] Such messages, sufficient to constitute "subsequent communications," necessarily constitute "communications." *See also, e.g., Yarbough v. FMS, Inc.*, No. 10-CV-61645, 2010 WL 4826247, at *1–*2 (S.D. Fla. Nov. 22, 2010) (Cohn, J.) (holding alleged message was communication under FDCPA where it stated "[t]o speak to a representative regarding this call, please press 1. If you are not interested in speaking with a representative, we will disconnect at this time" and did not "name the existence of a debt, any indebtedness, any debtor, any creditor, or any other personal, confidential or embarrassing information" (citing *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 654–55 (S.D.N.Y. 2006) (finding that pre-recorded message requesting return call was "communication" even though message did not "technically mention specific information about a debt or the nature of the call"))); *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F.Supp.2d 1336, 1340–41 (S.D.Fla.2008) (Dimitrouleas, J.) (collecting cases and observing, "[c]ourts generally consider pre-recorded messages and voice mail messages from debt collectors to be 'communications,' even if the messages do not state what the calls are regarding"); *Belin v. Litton Loan Servicing, LP,* No. 8:06-cv-760-T-24EAJ, 2006 WL 1992410, at *4 (M.D. Fla. July 14, 2006) (holding that voice messages "that only gave the name of [defendant], a phone number to call, and directions to have [plaintiff] call that number" were actionable communications under FDCPA); *Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F.Supp.2d 1104, 1115-16 (C.D.Cal.2005) ("While the messages may not technically mention specific information about a debt or the nature of the call, § 1692a(2) applies to information conveyed 'directly or indirectly.'").

These decisions are in line with those of other Circuits rejecting the idea that specific information regarding a debt, such as a demand for payment, is in itself determinative of whether a communication was made in connection with the collection of a debt, and looking additionally to other factors, such as the purpose of the communication. *See Grden v. Leikin Ingber & Winters PC*,

---

[4] The Court acknowledges that the issue on appeal in *Edwards* was "whether a debt collector is entitled to the bona fide error defense when it intentionally violates one provision of the [FDCPA] in order to avoid the risk of violating another provision [of the Act]." *Edwards*, 584 F.3d at 1352. However, the court nevertheless expressly stated that the communications in that case "were 'subsequent communications' within the meaning of § 1692e(11)." *Id.* at 1353 n.3.

642 F.3d 169 (6th Cir. 2011) ("[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor."); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385–86 (7th Cir. 2010) ("[T]he absence of a demand for payment is just one of several factors that come into play . . . . [T]he purpose and context of the communications . . . are important factors as well.").

In this case, ARM left a message for Thorne conveying "information," including instructions to return ARM's call and how to do so. Thorne Decl. ¶ 8; *cf. also* Rivera Dep. 10:3–15. Moreover, ARM does not dispute that it intended to leave this message on Thorne's answering machine, and that its purpose in leaving the message was to collect a debt. Rivera dep. 13:1–4 (stating that call placed to Thorne was "to collect an outstanding balance" due Westchester General Hospital); 15:20–25 (affirming that ARM intended to transmit that message to Thorne's answering machine). ARM's argument, basically requiring a reference to a debt on the face of the message, does not comport with the case law or underlying principles set forth above, and is particularly unconvincing considering that the fundamental premise of a § 1692e(11) claim is that a debt collector *failed* to disclose that the call concerned the collection of a debt. *See* 15 U.S.C. § 1692e(11). Accordingly, the message conveyed information "regarding a debt" directly or indirectly to Thorne, and it constitutes an actionable "communication" under the FDCPA for the purposes of Thorne's claims. ARM's Motion for Summary Judgment is denied as to Count I of Thorne's First Amended Complaint.

   c.  *Conclusion: Defendant's Motion for Summary Judgment*

In conclusion, the Court finds that Thorne has standing to pursue her FDCPA claims, and denies ARM's Motion for Summary Judgment on standing grounds. Moreover, the message ARM left for Thorne constituted an actionable "communication" under the FDCPA, and the Court denies ARM's Motion on those grounds as well. However, the Court finds that a claim under § 1692d(6) requires at least *two* violative calls within the relevant period of limitations, and that the record demonstrates no genuine issue of material fact regarding the single call made to Thorne within the relevant period. Accordingly, ARM's Motion for Summary Judgment is granted as to Count II, and denied as to Count I. The Court turns to Thorne's Motion for Partial Summary Judgment as it relates to her remaining claim in Count I under § 1692e(11).

## IV. ANALYSIS AND CONTROLLING AUTHORITY AS TO THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In her Motion for Partial Summary Judgment (as to liability only), Thorne argues that the record leaves no genuine dispute of material fact regarding ARM's violation of §§ 1692e(11) and 1692d(6). As the Court granted summary judgment for ARM regarding Thorne's § 1692d(6) claims, it only analyzes Thorne's Motion with respect to her § 1692e(11) claim.

"In order to prevail on an FDCPA claim, a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (Dimitrouleas, J.) (citing *Kaplan v. Assetcare, Inc.,* 88 F.Supp.2d 1355, 1360–61 (S.D. Fla.2000) (Gold, J.)); *see also Reese v. Ellis, Painter, Ratterree, & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012) ("[I]n order to state a plausible FDCPA claim under § 1692e, a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection.").

   a. *Collection Activity Arising from Consumer Debt*

First, Thorne must prove that she was the object of collection activity arising from consumer debt. The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay a debt," and defines a "debt" as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. §§ 1692a(3), (5). ARM does not dispute that Thorne is a "natural person," nor that she incurred an alleged "debt" to Westchester Healthcare Network for her medical care.[5] *See* Pl.'s Statement of Material Facts ¶¶ 1, 5; Def.'s Resp. to Pl.'s Motion for Summary Judgment 4:5. As discussed above, ARM also does not dispute that it intentionally left a message on Thorne's answering machine for the purposes of collecting that debt. Rivera dep. 13:1–4; 15:20–25. Therefore, the undisputed record demonstrates that Thorne was the object of collection activity arising from consumer debt.

---

[5] The Court notes that medical care necessarily constitutes a service "primarily for personal, family, or household purposes," a point not disputed by ARM. "The FDCPA broadly defines the word 'debt.'" *Reese*, 678 F.3d at 1211.

b. *"Debt Collector"*

Second, Thorne must prove that ARM is a "debt collector" under the FDCPA. ARM states in its Response that it "has not admitted it is a 'debt collector' as defined by the FDCPA in this case." Def.'s Resp. to Pl.'s Motion for Summary Judgment 4:8. The FDCPA defines a "debt collector," in pertinent part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). ARM admits that it "regularly uses the mail and telephone in a business the principal purpose of which is the collection of debts." Pl.'s Statement of Material Facts ¶ 3; Def.'s Resp. to Pl.'s Motion for Summary Judgment 4:7. Thus, while denying that it is a "debt collector," ARM admits that it meets the statutory definition of that term. ARM's denial notwithstanding, the undisputed record demonstrates that it is a "debt collector" as defined by the FDCPA.

c. *Violation of FDCPA*

Finally, Thorne must prove that ARM engaged in an act or omission prohibited by the FDCPA. As discussed above, § 1692e(11) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and further requires that in an initial oral communication with a consumer, a debt collector must indicate that it is attempting to collect a debt and that any information obtained will be used for that purpose, and that in subsequent communications, the debt collector must identify itself as a debt collector. 15 U.S.C. § 1692e(11).[6] There is only one message at issue in this case, as set forth by Thorne's uncontradicted declaration under penalty of perjury. That message plainly does not disclose ARM's name, its status as a debt collector, that it is attempting to collect a debt, or that any information obtained will be used for that purpose. Thorne Decl. ¶ 8; *see also* Rivera Dep. 11:2–7. The record demonstrates that this message was ARM's standard message in use at the time Thorne received it, and that at that time ARM had a written policy to leave such messages that did not disclose ARM's name or its identity as a debt collector. Rivera Dep. 10:3–15 (acknowledging standard message); 47:5–10 (acknowledging written policy). Thus, the record demonstrates that ARM, in a communication with Thorne (a consumer), failed to disclose that it was attempting to collect a debt, that any information obtained would be used for that purpose, or that the communication was from a debt collector, in violation of § 1692e(11).

---

[6] The Court has already found that the message ARM left for Thorne constituted a "communication" for the purposes of § 1692e(11). *See supra* Part III.b.2.

In response, ARM argues that: (1) Thorne lacks standing for the same reasons set forth in its own Motion for Summary Judgment; (2) the message was not a "communication" under the FDCPA; (3) Thorne cannot establish a claim under § 1692d(6); (4) there is no evidence of positive net worth for the purposes of class recovery; and (5) the question of whether ARM's conduct violated the FDCPA should be left to the jury to decide. The Court has already addressed most of these arguments above. Therefore, the Court addresses only ARM's last contention that the issue of an FDCPA violation should be left to the jury.

1. Factual Inquiry and Jury Question

ARM argues that the issue of its liability under § 1692e(11) presents an issue of fact for the jury to decide, as it involves a "factually specific" inquiry and an examination of "the content of each unique communication" in order to determine "whether the debtor would have understood that the debt collector's messages were from a debt collector in relation to debt collection activities." Def.'s Resp. to Pl.'s Motion for Summary Judgment 15–16. In support of this position, ARM relies upon the decision in *Beeders v. Gulf Coast Collection Bureau, Inc.*, in which the Middle District of Florida stated that "[w]hether particular conduct would . . . deceive the least sophisticated consumer is ordinarily a question for the jury," and that to prevail on summary judgment, a defendant must show that "no reasonable jury, when evaluating the messages through the eyes of the least sophisticated consumer, could possibly find that the phone messages failed to identify that the calls were from a debt collector and related to debt collection." No. 8:09-CV-00458-EAK-AEP, 2010 WL 2696404, at *4 (M.D. Fla. July 6, 2010). The *Beeders* court concluded that "the unique factual circumstances present here persuade the Court that whether the least sophisticated consumer would have understood that Gulf Coast's messages were from a debt collector in relation to debt collection activities is a disputed fact best submitted to a jury." *Id.* ARM also cites *Foti*, in which the Southern District of New York dismissed a plaintiff's claim with regard to one particular message due to the fact that when the message was listened to "in its entirety," the least sophisticated consumer would not have been misled. *Foti*, 424 F. Supp. 2d. at 670.

ARM correctly states that whether a debt collector's conduct constitutes a violation of the FDCPA involves some inquiry into the facts and circumstances of that conduct; however, this factual inquiry is assessed against an objective standard: whether the conduct would mislead the "least sophisticated consumer." *Ponce*, 467 F. App'x at 808 (citing *Jeter*, 760 F.2d at 1175). Applying this objective standard, the *Beeders* court found that the defendant's *inclusion of the name*

*of its company* in its messages presented an issue of fact requiring denial of summary judgment. *Beeders*, 2010 WL 2696404, at *4.  Similarly, the portion of *Foti*'s ruling relied upon by ARM applied the least sophisticated consumer standard to a message that expressly stated that the defendant was "calling in regard to . . . *two outstanding Columbia House accounts*" and detailed the amount of the outstanding accounts.  *Foti*, 424 F. Supp. 2d. at 670 (emphasis added).

By contrast, the undisputed record demonstrates that ARM's message did not disclose ARM's name, its status as a debt collector, that it was attempting to collect a debt, that any information obtained would be used for that purpose, or any account or file information.  There was no suggestion or clue whatsoever that ARM's message was from a debt collector.  Put simply, the message in this matter is of a completely different nature than the factually questionable messages at issue in *Beeders* and *Foti*.  "The Fair Debt Collection Practices Act specifically requires that a debt collector disclose in all communications with a debtor that the message is from a debt collector."  *Edwards*, 584 F.3d at 1351.  ARM's single message in this case clearly does nothing of the sort.  The Court finds that the fact that ARM was attempting to collect a debt, that any information obtained would be used for that purpose, or that the communication was from a debt collector would not be apparent even to the least sophisticated consumer.  Therefore, there is no genuine issue of material fact regarding ARM's violation of § 1692e(11), and summary judgment regarding liability is entered in Thorne's favor as to Count I.

### V.     CONCLUSION

Accordingly, based on the foregoing, it is **ORDERED and ADJUDGED** as follows:

1. The Defendant's Motion for Summary Judgment (ECF No. 62) is **GRANTED IN PART and DENIED IN PART.  JUDGMENT IS ENTERED** in favor of the Defendant, Accounts Receivable Management, Inc., and against the Plaintiff, Tiffany N. Thorne, regarding Count II of the First Amended Complaint (ECF No. 32) under 15 U.S.C. § 1692d(6).

2. The Plaintiff's Motion for Partial Summary Judgment (ECF Nos. 58, 59) is **GRANTED IN PART and DENIED IN PART.  JUDGMENT IS ENTERED as to liability only** in favor of the Plaintiff, Tiffany N. Thorne, and against the Defendant, Accounts Receivable Management, Inc., regarding Count I of the First Amended Complaint under 15 U.S.C. § 1692e(11).

3. This case shall continue with proceedings in order to determine statutory damages regarding Count I under 15 U.S.C. § 1692k(a)(2)(A). **On or before August 17, 2012**, the parties shall confer and file a *Joint Notice Regarding Statutory Damages*, not to exceed **ten (10) pages** in length, in which they shall set forth the following:

   a. whether the parties dispute the amount of statutory damages to be awarded to the Plaintiff, Tiffany N. Thorne; and
   b. if the amount of statutory damages to be awarded is in dispute:
      i. a brief statement of each party's position regarding the proper amount of statutory damages; and
      ii. whether the parties wish to submit the question to a jury or to the Court.

**DONE and ORDERED** in chambers, at Miami, Florida, on July 23, 2012.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Designated U.S. Magistrate Judge
Counsel of record